IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THEODORE D. S., II, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 20-CV-348-JFJ |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Theodore D. S., II seeks judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for disability benefits under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For the reasons explained below, the Court **REVERSES and REMANDS** the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.     General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological

---

[1] Effective July 9, 2021, pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing his past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). If a claimant satisfies his burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the

national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

**II.     Procedural History and the ALJ's Decision**

On January 10, 2018, Plaintiff, then a 48-year-old male, applied for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act. R. 15, 205-13. Plaintiff alleges that he has been unable to work since October 14, 2017, due to rheumatoid arthritis, knee pain, high blood pressure, autoimmune deficiency, plantar fasciitis, back pain, and "knots" all over his body. R. 205, 230. Plaintiff's claims for benefits were denied initially and on reconsideration. R. 55-122. ALJ Lantz McClain conducted an administrative hearing and issued a decision on November 19, 2019, denying benefits and finding Plaintiff not

3

disabled. R. 15-29, 36-54. The Appeals Council denied review, and the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. R. 1-3; 20 C.F.R. §§ 404.981, 416.1481.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date of October 14, 2017. R. 17. At step two, the ALJ found Plaintiff's degenerative disc disease, rheumatoid arthritis, hypertension, right carpal tunnel syndrome, status post right knee surgery, and obesity were severe impairments. *Id*. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. R. 18-19.

At step four, the ALJ summarized Plaintiff's hearing testimony, the medical source opinion evidence, and the medical evidence in the record. R. 14-27. He then found that Plaintiff had the residual functional capacity ("RFC") to perform less than the full range of light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), with frequent handling and fingering; occasional balancing, stooping, kneeling, crouching, or crawling, and climbing ramps or stairs; and never climbing ladders or scaffolds. R. 19. Based on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff could not return to his past relevant work. R. 27.

At step five, the ALJ concluded that Plaintiff could perform other occupations existing in significant numbers in the national economy, including routing clerk, mail clerk, and inspector and hand packager. R. 28. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). R. 29. Accordingly, the ALJ concluded Plaintiff was not disabled. *Id*.

4

**III.    Issues**

In challenging the Commissioner's denial of benefits, Plaintiff asserts the ALJ failed to properly evaluate the medical source opinion of treating physician Dr. Timothy Huettner. ECF No. 18. The Court agrees with this allegation of error, and therefore reverses and remands for further proceedings.

**IV.    Analysis**

The relevant medical records reveal that several providers treated Plaintiff with medication for diffuse myalgia and/or joint pain from January 2016 through August 2017. R. 331-47, 491-500, 521-36. Despite some intermittent and varied areas of induration or tenderness, physical examinations at these appointments consistently revealed full range of motion and intact strength in Plaintiff's extremities, and when assessed, full range of motion in his neck and full grip strength. In January 2017, Plaintiff's primary care provider Dr. Michele Bucholtz indicated that Plaintiff was currently taking or had tried all the medications recommended for fibromyalgia and she referred Plaintiff to a specialist. R. 526.

Plaintiff established care with Dr. Huettner, a rheumatologist, on February 2, 2017, and reported painful "knots" in his muscles, muscle weakness, and joint pain in his fingers. R. 355. At this initial appointment, Dr. Huettner found full strength in Plaintiff's arms but noted Plaintiff had "trouble squatting down all the way and getting back up. . . ." R. 354. Plaintiff's shoulders, spine, elbows, wrists, hips, feet, ankles, and metatarsophalangeal joints were normal, but the proximal interphalangeal joints on Plaintiff's left hand were tender without swelling and the medial portion of both knees were tender with full range of motion and no swelling. *Id.* Dr. Huettner referred Plaintiff for bilateral hand x-rays, the results of which showed degenerative change within the distal interphalangeal joint on Plaintiff's left thumb and small osteophytes within the distal

5

interphalangeal joints on Plaintiff's right hand, but no evidence of erosive arthropathy. R. 354, 416-17. Dr. Huettner also referred Plaintiff for an electromyography and nerve conduction study of his right upper and lower extremities, the results of which revealed right carpal tunnel syndrome. R. 354, 511. Thereafter, Dr. Huettner's physical examinations were normal through June 2017. R. 352-53. At a follow-up appointment on August 4, 2017, Dr. Huettner noted soft tissue swelling and some tenderness in Plaintiff's right third metacarpophalangeal joint, tenderness and reduced range of motion in his knees, and tenderness over both ankles. R. 351. Noting Plaintiff's joint inflammation, Dr. Huettner believed Plaintiff had an "inflammatory polyarthropathy" and prescribed an immunosuppressant medication. *Id.* By April 2018, Plaintiff reported he was feeling slightly better, and Dr. Huettner's physical examination of Plaintiff's joints showed some mild tenderness without swelling in some of his proximal interphalangeal joints. R. 476. Follow-up appointments in November 2018, April 2019, and September 2019 reflect Plaintiff continued to report joint pain, and Dr. Huettner's physical examinations of Plaintiff's hips, knees, ankles, shoulders, elbows, wrists, and hands were normal apart from a notation on September 18, 2019, that Plaintiff's distal interphalangeal joint on his right middle finger "may be slightly rotated laterally." R. 475, 610-11, 627-28.

On February 8, 2018, Plaintiff presented to the emergency room with complaints of low back pain after a car door struck him the week before. R. 403-12. A lumbar spine CT scan performed that day revealed mild changes of degenerative spondylosis. R. 408. Plaintiff was assessed with acute sciatica (left) and prescribed a corticosteroid. R. 404. At a follow-up appointment with Dr. Huettner on April 11, 2018, Plaintiff reported that his "main problem" was low back pain radiating to his left leg that began with his February 2018 injury. R. 423. On physical examination, Dr. Huettner found tenderness in Plaintiff's midline lumbar spine with

radiating left leg pain, and as discussed above, mild tenderness without swelling in some of his proximal interphalangeal joints. *Id.* Dr. Huettner indicated Plaintiff should be evaluated by a neurosurgeon or an orthopedic surgeon for his left lumbosacral radiculopathy. *Id.*

Plaintiff presented to neurosurgeon Dr. Daniel Boedeker on June 18, 2018, and reported neck pain radiating into both arms, numbness in his hands, low back pain, and numbness in his legs. R. 443. Dr. Boedeker did not find any weakness or spastic reflexes on exam but indicated Plaintiff's cervical MRI showed significant spondylosis and stenosis from C3-4 through C4-5, which likely explained his symptoms. R. 437-38, 443-46. Dr. Boedeker noted that he did not have any imaging of Plaintiff's lumbar spine to review. R. 443. He indicated he would generally recommend an epidural steroid injection or physical therapy, but because Plaintiff was without health insurance these options were cost prohibitive, so he recommended home exercises and prescribed cervical traction instead. R. 446. At a follow-up appointment with Dr. Huettner on November 2, 2018, Plaintiff reported that he had degenerative disc disease in his neck and needed surgery but could not afford it. R. 475. Dr. Huettner found decreased range of motion in Plaintiff's cervical spine but no tenderness, and his physical examination was otherwise normal as set forth above. *Id.*

On September 19, 2019, Dr. Huettner completed a physical medical source statement of Plaintiff's ability to do work-related activities. R. 630-32. Dr. Huettner indicated Plaintiff could never lift/carry more than 10 pounds, could sit for less than thirty-minutes at one time for a total of less than 2 hours in an 8-hour workday, and could stand and/or walk for less than thirty-minutes at one time for a total of less than 2 hours in an 8-hour workday. R. 630. Although he indicated Plaintiff did not have manipulative limitations, Dr. Huettner nonetheless found Plaintiff could only use his hands frequently for handling and rarely for fingering or feeling. R. 631. He further found

7

Plaintiff needed to change positions from sitting or standing every 20 minutes. *Id.* Dr. Huettner opined that Plaintiff could not perform work with the limitations he identified on a sustained and continuing basis due to his cervical spondylosis and stenosis, referencing Dr. Boedeker's June 2018 findings as support. R. 632.

For claims filed after March 27, 2017, such as Plaintiff's claims, 20 C.F.R. §§ 404.1520c and 416.920c provide that the ALJ will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).[2] Instead, the ALJ now need only articulate how persuasive he finds each medical source's opinion. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). Persuasiveness is based primarily on an opinion's supportability and consistency, and the ALJ must explain how he considered those two factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).[3] The ALJ may, but is typically not required to, discuss other considerations that may affect the persuasiveness of a medical opinion, such as the source's relationship with the claimant, the source's area of specialization, and other factors tending to support or contradict a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2)-(c), 416.920c(b)(2)-(c).

In his written decision, the ALJ found Dr. Huettner's opinion not persuasive. R. 26. Although the ALJ thoroughly summarized Dr. Huettner's treatment notes and opinion, and

---

[2] In adopting the revised rules, the Social Security Administration explained: "To account for the changes in the way healthcare is currently delivered, we are adopting rules that focus more on the content of medical opinions and less on weighing treating relationships against each other. This approach is more consistent with current healthcare practice." *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01, at 5854, 2017 WL 168819 (Jan. 18, 2017).

[3] For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). For consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

8

accurately referenced 20 C.F.R. §§ 404.1520c, 416.920c, he failed to properly assess the persuasiveness of Dr. Huettner's opinion. R. 19, 21-26. The regulations set forth above not only require the ALJ to discuss how persuasive he found the medical source opinions he considered, but also require him to explain how he considered the supportability and consistency factors as part of such discussion. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). This is the "minimum level of articulation" necessary to "provide sufficient rationale for a reviewing adjudicator or court" to understand the ALJ's persuasiveness analysis. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01, at 5858, 2017 WL 168819 (Jan. 18, 2017).

The supportability factor examines how well a medical source supported his or her own opinion with "objective medical evidence" and "supporting explanations." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). As to this factor, the ALJ found Dr. Huettner's opinion was inconsistent with his own treatment notes and examination findings. R. 26-27. In reaching such conclusion, the ALJ specifically noted Dr. Huettner's findings from a physical examination conducted the day before Dr. Huettner issued his medical source opinion, including no tenderness in Plaintiff's cervical, thoracic, or lumbar spines; normal hips, knees, ankles, shoulders, elbows, and wrists; and "some" curving of Plaintiff's right middle finger at the distal interphalangeal joint, but no swelling or tenderness in his hands. *Id.* Elsewhere in the opinion, the ALJ also summarized Dr. Huettner's treatment notes from the relevant period and correctly concluded that "on multiple occasions, there was no tenderness of the cervical, thoracic and lumbar spines with normal examinations of the hips, knees, ankles, shoulder's [sic] elbows and wrists." R. 22-25. The Court finds no error with the ALJ's explanation of the supportability factor.

Application of the consistency factor requires a comparison between the medical source opinion and "the evidence from other medical sources and nonmedical sources" in the record.[4] 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). In this case, the ALJ summarized Dr. Huettner's opinion and treatment notes, as well as the other medical and nonmedical evidence of record, but provided no analysis of how Dr. Huettner's opinion compared to the other evidence. Instead, the ALJ ended his analysis once he found Dr. Huettner's opinion not supported by his own treatment notes. The plain language of the regulations is clear that the ALJ, *at a minimum*, must specifically explain how he applied the supportability and consistency factors in determining the persuasiveness of a medical source opinion. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) ("[W]e *will* explain how we considered the supportability and consistency factors for a medical source's opinions . . . in your determination or decision." (emphasis added)). Thus, despite adequately addressing the supportability factor as explained above, the ALJ's failure to explain his consideration of the consistency factor was error. This analysis was particularly important with respect to Dr. Boedeker's examination because Dr. Boedeker indicated Plaintiff's May 2018 cervical spine MRI showed "significant" spondylosis and stenosis from the C3-4 through C4-5 levels that likely explained his symptoms, and Dr. Huettner relied on Dr. Boedeker's examination, in part, as support for his opinion. Failing to address this "consistent" evidence indicates the ALJ failed to apply the correct legal standards in evaluating Dr. Huettner's opinion, and remand is required. *See, e.g., Downey v. Kijakazi,* No. CIV-20-1040-SM, 2021 WL 4524186, at * 4 (W.D.

---

[4] The Commissioner does not meaningfully address Plaintiff's allegation of error with respect to the ALJ's discussion of the consistency factor. Instead, the Commissioner simply argues that this allegation of error amounts to a request that the Court reweigh the evidence because the ALJ summarized most of the evidence elsewhere in the opinion. However, unlike his analysis of the supportability factor as explained above, the ALJ did not provide a clear link between his previous recitation of the evidence and the reasons that Dr. Huettner's opinion was inconsistent with that evidence. The Court cannot assume that such evidence factored into his evaluation of the opinion.

Okla. Oct. 4, 2021) (remanding, in part, because the ALJ "completely failed to explain how consistent she found [the medical source] opinion by comparing it 'with the evidence from other medical sources and nonmedical sources in the claim.'" (quoting 20 C.F.R. § 416.920c(c)(2)); *Augare v. Kijakazi,* No. CIV-20-192-RAW-SPS, 2021 WL 4433180, at *4 (E.D. Okla. August 31, 2021) ("[T]he ALJ provided no discussion or analysis as to the supportability factor, which alone is reversible error.").

This error is harmful, as Dr. Huettner assessed Plaintiff with physical limitations not accounted for in the RFC or the hypothetical question posed to the VE. Accordingly, remand is required for proper consideration of Dr. Huettner's opinion.

**V.     Conclusion**

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **REVERSED and REMANDED** for proceedings consistent with this Opinion and Order**.**

**SO ORDERED** this 17th day of December, 2021.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**